FRUGÉ, Judge.
This action involves a rear-end collision whereby the plaintiff, Beulah Guillotte, was struck in the rear by Mrs. Evelyn Gaspard, the defendant’s insured, while Mrs. Guillotte was stopped on Louisiana Highway 13, three or four miles south of the town of Crowley. The trial court gave judgment in favor of Mrs. Guillotte in the sum of $750.00 and in favor of Mr. Guillotte in the sum of $976.67, after concluding that the negligence of Mrs. Gas-pard was the sole proximate cause of the accident. From these judgments the defendant, Fireman’s Insurance Company of Newark, N. J., the liability insurer of the automobile driven by Mrs. Gaspard, has perfected this devolutive appeal.
There is very little dispute as to' the facts. Mrs. Guillotte was proceeding north from the farm where she and her husband lived toward the town of Kaplan between the hours of 12:00 Noon and 1:00 p. m. for the purpose of purchasing some groceries. After leaving her house, but before turning onto Louisiana Highway 13, Mrs. Guillotte noticed that her car, a 1964 Chevrolet with an automatic transmission, was driving rather peculiarly. It was not until she turned heading North on Louisiana Highway 13 that she determined that she must have a flat or a low tire. While proceeding north toward Crowley, she met her husband, Mr. Guillotte, who was driving his pickup truck south from Crowley toward the farm. The two vehicles stopped side by side in their respective lanes, and Mrs. Guillotte told her husband that she thought something might be wrong with her tire; so Mr. Guillotte drove his truck onto the right shoulder (the southbound lane) off the highway and walked back to where his wife was stopped, and he checked the tires, finding the right rear tire on that automobile rather low. All this while, Mrs. Guillotte left the motor running and had not moved her car from the northbound lane of traffic of Louisiana Highway 13. Mr. Guillotte told his wife that the tire was not so low that she could not drive on into Crowley, but that he would follow her to be sure nothing happened. Mrs. Guil-lotte was at the time about eight and one-half months pregnant and therefore Mr. Guillotte did not want her to be changing a tire on the car. As Mr. Guillotte was about to cross the road and return to his pickup truck, he observed the car driven by Mrs. Gaspard, accompanied by a guest passenger, proceeding north along Louisiana Highway 13 at a distance he estimated at a quarter of a mile away. Mr. Guillotte then shouted to his wife, “A car is coming. You better get out of the way — it’s going to hit you.” Mrs. Guillotte then glanced in her rear view mirror and saw the Gaspard automobile bearing down on her, as she testified, at least one-quarter of a mile down the road. The only action taken by Mrs. Guillotte was that she applied her brake and braced herself after becoming aware that the overtaking automobile would not stop in time.
Mrs. Gaspard testified that she observed the Guillotte vehicle some distance ahead but believed it to be moving until she saw the brake lights on the Guillotte automobile, at which time, she testified, she did *785 all she could to stop but was unable to avoid the Guillotte vehicle. The front of the Gaspard automobile struck the rear of the Guillotte automobile, pushing the Guil-lotte vehicle sixty-nine feet from the point of impact. The Gaspard vehicle stopped fifteen to eighteen feet from the point of impact. Both passengers in the Gaspard vehicle were hospitalized.
The speed of the Gaspard automobile was estimated by the investigating state trooper to be around 60 miles an hour, which estimate was verified by Mrs. Gas-pard, who stated that that was her speed before she applied her brakes. Sixty miles per hour was also the speed limit for that highway.
Apparently, the trial court was of the opinion that Mrs. Guillotte did not have enough time to move her automobile from the path of the overtaking vehicle; for he awarded judgment in favor of plaintiffs (without written reasons).
On this appeal, counsel for both parties have conceded the negligence of their respective clients. Mrs. Gaspard was negligent in failing to appreciate the danger any sooner than she did; for her vision was unobstructed and she took no precautions until she got within such a distance from the Guillotte vehicle that she was unable to avoid the accident. Mrs. Guillotte was negligent in violating R.S. 32:141, which provides in part:
“[N]o person shall stop, park or leave standing any vehicle, whether attended or unattended, upon a paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of such highway * * *."
There appears little doubt but that the negligent acts of both Mrs. Gaspard and Mrs. Guillotte were substantial factors in causing the injuries sustained. The sole basis on which plaintiffs may recover, as conceded by their counsel, is through the application of the last clear chance doctrine.
Plaintiffs’ counsel urged that Mrs. Gas-pard had the last clear chance to avoid the accident because had she been more attentive, she would have become appraised of the apparent danger ahead within sufficient time and distance to have stopped her automobile or to have maneuvered it around the Guillotte vehicle.
Counsel for the defendant strongly urges that last clear change can have no application here, because the first requisite of the doctrine does not exist. He contends that plaintiffs have failed to show that Mrs. Guillotte was either (1) in a position of peril from which she was unable to extricate herself or (2) in a position of peril of which she was unaware. The evidence appears clear that Mrs. Guil-lotte was aware of her danger because she actually observed the Gaspard vehicle overtaking her one-quarter of a mile behind.
Therefore, the issues have been reduced to one factual question for determination as to whether or not Mrs. Guillotte was capable of extricating herself from the peril she was in.
The trial court was apparently impressed, as are we, with the statement of Mr. Guillotte, who observed the accident from his position on the side of the road near the vehicle driven by Mrs. Guillotte. Mr. Guillotte testified that after he had shouted the warning to his wife, he did not feel that she had enough time to have driven her car off the highway onto the shoulder of the road before the impact with the Gaspard vehicle. If we accept this statement by Mr. Guillotte as true, then it would appear that Mrs. Guillotte was *786 in a position of peril from which she was unable to have timely extricated herself.
The trial court apparently found the weight of evidence favoring this position despite strong arguments on the part of counsel for defendant that, by her own testimony on direct examination, Mrs. Guillotte admitted observing the Gaspard vehicle a quarter of a mile down the road behind her and that thereby Mrs. Guillotte had sufficient time to have maneuvered her car onto the shoulder of the highway, since the vehicle had an automatic transmission and the motor was running.
Giving full consideration to the findings of the trial court, we are unable to say that he was manifestly erroneous in concluding that Mrs. Guillotte did not have enough time, after observing the Gaspard vehicle rapidly overtaking her, to have maneuvered her automobile onto the shoulder of the highway before impact. Therefore, we are unable to say that the doctrine of last clear chance has no application to the instant case.
The accident occurred less than three weeks before Mrs. Guillotte gave birth to her child. As a result of the accident, Mrs. Guillotte suffered from a slight neck injury. We feel that the evidence established that Mrs. Guillotte suffered from some pain and substantial discomfort in her neck for a period from two to three weeks after the date of the injury. The evidence is also sufficient to sustain a finding that Mrs. Guillotte, who was already suffering from some nervousness because of her condition, sustained very substantial aggravation of her nervous condition as a consequence of this accident. It was shown that she cried excessively and for no reason from the time of the accident until after the birth of the child. It was also shown that she was mentally distressed over the possibility of injury to the unborn child as a result of the collision, but that this worry and concern was terminated upon the birth of the child, since the child appeared healthy and normal in all respects. We are unable to agree with counsel for the defendant’s contention that the award rendered to Mrs. Guillotte by the trial court in the amount of $750.00 for the above mentioned injuries was “grossly excessive and constituted an abuse of the Trial Court’s great discretion”.
The trial court further awarded Cleveland Guillotte, Mrs. Guillotte’s husband, damages in the sum of $976.67 — $635.11 of this award was attributable to the damages sustained by the Guillotte automobile as a result of the collision, and $7.00 represents the cost of a visit Mrs. Guillotte made to her doctor immediately after the accident. These allowances are not attacked by the defendant. Defendant does, however, attack an award of special damages in the sum of $334.56, which represents the cost to plaintiff, Mr. Guillotte, of renting another car for a period of forty-one days while the automobile involved in the collision was being repaired.
Both Mr. and Mrs. Guillotte testified that they had believed the so-called rental car was an accommodation service made by the repair shop because the manager knew Mrs. Guillotte was near childbirth and that an automobile would be necessary in case of emergency. .Since the $334.56 represents a charge made by the repair shop under a contract of lease of a movable in the amount of $8.00 per day, that charge is not one which may be assessed against the defendant in this suit unless Mr. Guillotte was legally obligated to pay it.
In order to have a binding contract of lease, three things are absolutely necessary according to Civil Code Art. 2670: The thing, the price, and the consent. Here, the evidence is insufficient to show *787 that Mr. Guillotte had intended to rent the automobile in question, for he did not expect to have been billed for the use of the substitute automobile. He further testified that he did not believe the charge was a reasonable one. Since his testimony was not rebutted, it appears clear that Mr. Guillotte never intended to enter into a lease agreement with the repair shop and that he did not expect to have to pay anything for the substitute automobile. As a result, we do not feel that Mr. Guil-lotte would be bound under the alleged contract of lease, and therefore, the claim of $334.56 for the rental of the substitute automobile under the alleged contractual agreement will not be allowed.
It thus becomes unnecessary for us to pass upon the appellant’s further contention that the Guillotte automobile which was involved in the collision was strictly a pleasure vehicle and not one' used in the plaintiff’s business and that no award for the rentals on a substitute pleasure automobile can be permitted.
For the foregoing reasons, the judgment of the trial court is affirmed, insofar as it awards Beulah Guillotte the sum of $750.00 for pain and suffering, and Cleveland Guillotte the sum of $642.11, and amended so as to reject the item of damages in the sum of $334.56, representing the alleged rental costs of a substitute automobile for forty-one days. As amended, judgment of the trial court is affirmed. Defendant-appellant, Fireman’s Insurance Company of Newark, N. J. is to pay the costs of this appeal.
Amended and affirmed.
En banc.